**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| **MACK HENRY GRAY,** ) | |
| **ID # 1338334,** ) | |
| Petitioner, ) | |
| vs. ) | No. 3:08-CV-1225-M (BH) |
| ) | |
| **NATHANIEL QUARTERMAN, Director,** ) | Referred to U.S. Magistrate Judge |
| **Texas Department of Criminal** ) | |
| **Justice, Correctional Institutions Division,** ) | |
| Respondent. ) | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to the provisions of 28 U.S.C. § 636(b) and Special Order 3-251, this case has been referred to the United States Magistrate Judge for findings, conclusions, and recommendation.

**I. BACKGROUND**

Petitioner, an inmate currently incarcerated in the Texas Department of Criminal Justice - Correctional Institutions Division (TDCJ-CID), filed this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 to challenge convictions for delivery of a controlled substance in Cause Nos. F05-35811-PS, F05-35812-PS, and F05-35813-PS. Respondent is Nathaniel Quarterman, Director of TDCJ-CID.

**A. Procedural and Factual History**

On September 27, 2005, the State indicted petitioner on three charges of delivery of cocaine, each enhanced by two prior felony convictions. (Trial Transcript[F05-35811-PS]:2; Tr.[F05-35812-PS]:2; Tr.[F05-35813-PS]:2). He made an open plea of guilty to the charged offenses in F05-35811-PS and F05-35813-PS and to a lesser-included offense in F05-35812-PS, pled true to one of the two enhancement paragraphs in each case, and received a fifteen-year sentence in each case. *Id*. at 7-8.

Petitioner filed a direct appeal alleging that the sentences he received constituted cruel and

unusual punishment, and that one of the judgments should be modified to show the correct offense. The Fifth District Court of Appeals affirmed petitioner's convictions in an unpublished opinion, although the court did correct clerical errors in two of the judgments. *Gray v. State*, Nos. 05-05-01658-CR, 05-05-01659-CR, 05-05-01660-CR (Tex. App. – Dallas, May 30, 2006). After receiving an extension to file petitions for discretionary review, petitioner failed to timely file his petitions, and the Court of Criminal Appeals issued orders in each case striking the petitions. *Ex parte Gray*, PD-0975-06, PD-0976-06, PD-0977-06 (Tex. Crim. App. September 20, 2006). On July 26, 2007, petitioner filed state applications for writ of habeas corpus in each of the three cases raising, among others, the same issues as his federal petition. (State Habeas Transcript[W05-35811-S(A)]:2-10; S.H.Tr.[W05-35812-S(A)]:2-10; S.H.Tr.[W05-35813-S(A)]:2-10). On June 11, 2008, the Court of Criminal Appeals denied petitioner's state applications without written order on the findings of the trial court without an evidentiary hearing. (*Id.* at covers).

On July 13, 2008, petitioner filed his petition for federal habeas relief. (*See* Pet. Writ of Habeas Corpus (Pet.) at 9).[1] Respondent filed an answer on February 12, 2009, (*see* Answer), and provided the state court records. Petitioner filed a reply brief on March 2, 2009. (*See* Petitioner's Statement of the Case).

**B. Substantive Issues**

Petitioner asserts that: (1) his guilty pleas were involuntary because his attorney told him to make open pleas of guilty and promised him that he would be out of jail by a specific date; (2) his guilty pleas were involuntary because his confession was coerced by his attorney's representation that he would receive probation; (3) he received ineffective assistance of counsel because his

---

[1] *See also Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999) (recognizing that prisoners file their federal pleadings when they place them in the prison mail system).

2

attorney did not review his file and told him that he would receive probation when he was ineligible for it; and (4) he was denied due process because the trial judge did not give him an opportunity to testify on his own behalf. (Pet. at 7-8). Respondent does not contend that petitioner failed to exhaust any of his claims at the state level.

## II. APPLICABLE LAW

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. 104-132, 110 Stat. 1217, on April 24, 1996. Title I of the Act applies to all federal petitions for habeas corpus filed on or after its effective date. *Lindh v. Murphy*, 521 U.S. 320, 326 (1997). Because petitioner filed the instant petition after its effective date, the Act applies to his petition.

Title I of AEDPA substantially changed the way federal courts handle habeas corpus actions. Under 28 U.S.C. § 2254(d), as amended by AEDPA, a state prisoner may not obtain relief

> with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"In the context of federal habeas proceedings, a resolution (or adjudication) on the merits is a term of art that refers to whether a court's disposition of the case was substantive, as opposed to procedural." *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000). In this case, the denial of petitioner's state writ constitutes an adjudication on the merits. *See Ex parte Thomas*, 953 S.W.2d 286, 288-89 (Tex. Crim. App. 1997) (holding that a denial, rather than a dismissal, signifies an adjudication on the merits). Thus, the AEDPA standards enumerated in 28 U.S.C. § 2254(d) apply.

Section 2254(d)(1) concerns pure questions of law and mixed questions of law and fact. *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001). A decision is contrary to clearly established federal law within the meaning of § 2254(d)(1) "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).

With respect to the "unreasonable application" standard, *Williams* instructs that a writ must issue "if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413; *accord Penry v. Johnson*, 532 U.S. 782, 792 (2001). Likewise under *Williams*, a state court unreasonably applies Supreme Court precedent if it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." 529 U.S. at 407. "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409; *accord Penry*, 532 U.S. at 793.

Section 2254(d)(2) concerns questions of fact. *Moore v. Johnson*, 225 F.3d 495, 501 (5th Cir. 2000). Under § 2254(d)(2), federal courts "give deference to the state court's findings unless they were 'based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.'" *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000). The resolution of factual issues by the state court is presumptively correct and will not be disturbed unless the state prisoner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### III.  VOLUNTARINESS OF PLEA

In his first and second grounds for relief, petitioner asserts that his guilty pleas were involuntary because trial counsel told him to make an open plea to the judge so that he would be released by a certain date and because his judicial confessions at the hearing were coerced by counsel's promise that he would receive probation.  (Pet. at 7).

A plea of guilty waives a number of constitutional rights.  *Boykin v. Alabama*, 395 U.S. 238, 242-43 (1969); *Joseph v. Butler*, 838 F.2d 786, 789 (5th Cir. 1988).  Therefore, the Fourteenth Amendment Due Process Clause imposes certain requirements to ensure the validity of a guilty plea. *Fischer v. Wainwright*, 584 F.2d 691, 692 (5th Cir. 1978) (citing *Brady v. United States*, 397 U.S. 742 (1970); *Boykin*, 395 U.S. 238; *Johnson v. Zerbst*, 304 U.S. 458 (1938)).  "*Boykin* requires that defendants have a hearing prior to entry of the plea, at which there needs to be an affirmative showing that the decision to plead guilty was voluntarily and intelligently made."  *Matthew v. Johnson*, 201 F.3d 353, 368 n.22 (5th Cir. 2000).  In addition, "the voluntary and intelligent nature of the plea [must] be apparent on the face of the record."  *See Holloway v. Lynaugh*, 838 F.2d 792, 793 (5th Cir. 1988).

A plea "is constitutionally valid only to the extent it is 'voluntary' and 'intelligent.'" *Bousley v. United States*, 523 U.S. 614, 618 (1998) (quoting *Brady*, 397 U.S. at 748).  "The voluntariness of a plea is determined by 'considering all of the relevant circumstances surrounding it.'"  *Id.* (quoting *Brady*, 397 U.S. at 749).  Pleas are involuntary when induced by threats, improper promises, deception, or misrepresentation.  *See Daniel v. Cockrell*, 283 F.3d 697, 702-03 (5th Cir.), *cert. denied*, 537 U.S. 874 (2002); *United States v. Amaya*, 111 F.3d 386, 389 (5th Cir. 1997).  A plea qualifies as intelligent when the criminal defendant enters it after receiving 'real notice of the

true nature of the charge against him, the first and most universally recognized requirement of due process.'" *Bousley*, 523 U.S. at 618 (quoting *Smith v. O'Grady*, 312 U.S. 329, 334 (1941)). "Before the trial court may accept a guilty plea, the court must ensure that the defendant 'has a full understanding of what the plea connotes and of its consequence.'" *Taylor v. Whitley*, 933 F.2d 325, 329 (5th Cir. 1991) (quoting *Boykin*, 395 U.S. at 244). "A guilty plea is invalid if the defendant does not understand the nature of the constitutional protection that he is waiving or if he has such an incomplete understanding of the charges against him that his plea cannot stand as an admission of guilt." *James v. Cain*, 56 F.3d 662, 666 (5th Cir. 1995) (citing *Henderson v. Morgan*, 426 U.S. 637, 645 n.13 (1976)).

A prisoner may not generally "collaterally attack a voluntary and intelligent" plea. *Taylor*, 933 F.2d at 329. A guilty plea "entered by one fully aware of the direct consequences . . . must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (*e.g.* bribes)." *See Brady*, 397 U.S. at 755. "If a defendant understands the charges against him, understands the consequences of a guilty plea, and voluntarily chooses to plead guilty, without being coerced to do so, the guilty plea . . . will be upheld on federal review." *Frank v. Blackburn*, 646 F.2d 873, 882 (5th Cir. 1980) (*en banc*), *modified on other grounds*, 646 F.2d 902 (5th Cir. 1981) (per curiam).

At the state habeas level, petitioner's trial counsel submitted an affidavit explaining that he was retained to represent petitioner in three cases alleging different cocaine deliveries within the span of sixteen days. (S.H.Tr.[W05-35811-S(A)]]:50). Prior to these three cases, petitioner had been convicted of five felonies (three also for possession of a controlled substance) and six

misdemeanors (five for the unlawful carrying of a weapon and one for evading arrest). The Dallas County criminal records database reflects all of these prior convictions plus several other misdemeanors for driving with a suspended license. The database also indicates that petitioner pled guilty to all of these offenses. (*See* www.dallascounty.org/criminalBackgroundSearch, search under petitioner's name). Counsel's affidavit further states that based on the facts of the three cases, petitioner would have probably have lost if he had gone to a jury trial. Given the high sentence recommendation from the District Attorney's office, the only option was to make an open plea of guilty. Counsel avers that he never promised petitioner probation, and he never told petitioner that he knew the judge and that he would give probation to someone with petitioner's criminal history. Finally, the affidavit states that counsel reviewed the allegations with petitioner and argued for mercy, leniency, and probation during sentencing. (S.H.Tr.[W05-35811-S(A)]:50).

The trial court found counsel to be a credible individual worthy of belief. Based on his affidavit as well as the admonishments given to petitioner when he pled guilty and the plea agreement he signed, the court found that the pleas were not induced by a promise of probation and that petitioner's pleas were freely and voluntarily made. The court also concluded that petitioner's judicial confessions were not coerced by any promise of probation. (*Id*. at 34-36).[2] The Court of Criminal Appeals denied petitioner's state applications for writ of habeas corpus on the findings of the trial court. (S.H.Tr. at covers). The trial court's factual findings are not an unreasonable determination of the facts in light of the evidence presented in the state court proceeding, and the conclusion is not contrary to federal law.

Petitioner signed plea agreements in each case for open pleas of guilty and pleas of true to

---

[2] The Court cites to the state habeas transcript for one of the three convictions, but the state court's findings and conclusions are the same in each of the three cases.

7

the enhancement paragraph in each case. (Tr.:7-8).[3] Above the signature in each agreement is the statement that petitioner had read and understood the admonitions and warnings regarding his rights and his plea, that his attorney had explained them to him, and that his statements and waivers were knowingly, freely, and voluntarily made with full understanding of the consequences. *Id.*

When petitioner pled guilty before the trial court in these cases on November 17, 2005, the trial court advised petitioner that the State had agreed to drop one of the enhancement paragraphs in two of his delivery of cocaine offenses. This dropped the minimum sentence in each of those cases to fifteen years. The court further advised petitioner that the State had agreed to prosecute him for delivery of a lesser amount of cocaine in the third case and had agreed to drop one of the enhancement paragraphs, making the minimum sentence in that case five years. (R.1:4-5). Petitioner stated that he understood this and also understood that the maximum sentence in each case was a life sentence. (R. 1:5). The trial judge also advised petitioner that the only probation that he would be eligible for would be deferred adjudication, that the State was opposing any type of probation for petitioner, and that he had not yet decided whether these were the types of cases for which he would give deferred adjudication. (R. 1:6). Petitioner stated that he understood, and at that point he elected to plead guilty in each of the three cases and entered a plea of true to the enhancement paragraph in each case. (R. 1:7). His signed confessions and his pleas of true were all then admitted into evidence. (R. 1:7).

Later, petitioner testified that he sold drugs to support himself and his children, that he regretted doing so, and that he sold drugs to the same undercover officer three different times. (R. 1:15-16). Petitioner also testified on cross-examination that prior to being arrested in these three

---

[3] The plea agreements are on the same pages of the trial transcript in each of the three cases.

cases, he had been selling drugs for six to eight months. (R. 1:22-23). In his closing argument, petitioner's attorney stated that petitioner's parole in a prior case would be revoked because of the three cases, and that he would have to complete the last three years of his prior sentence. Counsel then asked the judge to give petitioner ten years' deferred adjudication in each case with the requirement that he serve 180 days in jail as a condition of probation and to be "creative" with his sentence so that petitioner could continue with his furniture business and support his family. (R. 1:28-29). In his closing statement, the assistant district attorney requested that petitioner be given more than the minimum fifteen-year sentence because petitioner would not successfully complete probation, given his many prior arrests. (R. 1:29).

After finding that petitioner's pleas were freely and voluntarily given and that petitioner was competent, the trial judge informed petitioner that he would not give him probation despite the low amount of drugs because there were three different cases, he had a prior record, and he had problems on probation before. The judge then sentenced petitioner to fifteen years in each of the three cases. (R. 1:29-30).

Petitioner has not shown that his attorney told him that he would receive probation and be released from jail by a certain date. The record shows that before he pled guilty, petitioner was admonished by the trial court that he could receive any sentence in the range of fifteen to ninety-nine years or life in two of his cases and between five and ninety-nine years or life in the third case. Petitioner testified that he understood the range of punishment, that he was only eligible for deferred adjudication, and that the trial judge had not yet determined whether he would give petitioner deferred adjudication probation. Trial counsel's affidavit, found to be credible by the trial court, states that he never promised petitioner that he would receive probation and never advised petitioner

9

that he knew the trial judge would give him probation. This factual issue was resolved by the state court, and petitioner has not rebutted the presumption that this finding is correct by clear and convincing evidence.

Petitioner also asserts that his confessions were coerced, that he said "yes" to all of the questions asked of him only because he believed that he would receive probation, and that he does not understand the law. The record from the plea hearing does not so reflect. Petitioner stated that he understood all of the admonitions given to him from the judge. After pleading guilty, he explained in detail how he sold cocaine to an undercover police officer three separate times and the amounts. He also testified about his remorse and desire for probation. Moreover, petitioner has an extensive criminal history, and has pled guilty to numerous offenses. He is not a novice in this area who is wholly ignorant of the law.

Petitioner has not shown that his guilty pleas were involuntary. His first and second grounds for relief are without merit and should be denied.

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

In his third ground for relief, petitioner asserts that he received ineffective assistance of counsel at trial because counsel did not go over his case with him to see what he was facing and told him he would receive probation when he was not eligible for it. (Pet. at 7). In his reply brief, petitioner also asserts that his attorney was ineffective for failing to file an appeal on his behalf.

Guilty pleas are "open to attack on the ground that counsel did not provide the defendant with 'reasonably competent advice.'" *Cuyler v. Sullivan*, 446 U.S. 335, 344 (1980) (quoting *McMann v. Richardson*, 397 U.S. 759, 770-771 (1970)). With respect to guilty pleas, "[c]ounsel is needed so that the accused may know precisely what he is doing, so that he is fully aware of the

10


prospect of going to jail or prison, and so that he is treated fairly by the prosecution." *Argersinger v. Hamlin*, 407 U.S. 25, 34 (1972). However, once a criminal defendant enters a knowing, intelligent, and voluntary guilty plea, all non-jurisdictional defects in the proceedings below are waived except for claims of ineffective assistance of counsel relating to the voluntariness of the plea. *United States v. Glinsey*, 209 F.3d 386, 392 (5th Cir. 2000); *Nelson v. Hargett*, 989 F.2d 847, 850 (5th Cir. 1993); *Smith v. Estelle*, 711 F.2d 677, 682 (5th Cir. 1983).

> When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann*.

*Tollett v. Henderson*, 411 U.S. 258, 267 (1973).

To successfully state a claim of ineffective assistance of counsel under existing precedent of the United States Supreme Court, petitioner must demonstrate (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced his defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). The *Strickland* test applies when a petitioner alleges he was denied effective assistance of counsel in the context of a guilty plea. *Hill v. Lockhart*, 474 U.S. 52, 57-58 (1985). "[I]n a guilty plea scenario, a petitioner must prove not only that his attorney actually erred, but also that he would not have pled guilty but for the error." *See Armstead v. Scott*, 37 F.3d 202, 206 (5th Cir. 1994). A failure to establish either prong of the *Strickland* test requires a finding that counsel's performance was constitutionally effective. *See* 466 U.S. at 696. Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent the alleged errors of counsel. *Id.* at 695-96.

Petitioner has not shown that his attorney advised him that he would, in fact, receive

probation if he pled guilty. As noted earlier, the trial court informed petitioner prior to his plea of the sentencing range he was facing and that any decision regarding probation was the judge's decision alone. In the affidavit found credible by the state habeas court, trial counsel states that he discussed the cases with petitioner, and that petitioner was interviewed extensively by the probation department. He also states that petitioner never stated a desire to appeal to him. (S.H.Tr.[W05-35811-S(A)]:50). The state habeas court concluded that counsel was not ineffective, and petitioner was provided a full and fair appeal by his appellate attorney. (*Id*. at 37-38). This conclusion is not an unreasonable application of the *Strickland* standard.

As for petitioner's assertion that he was not eligible for probation, he was eligible under state law to be sentenced to deferred adjudication for the three offenses. *See* TEX. CODE CRIM. PROC. art. 42.12, § 5(d) (West 2003). Under state law, "community supervision" encompasses both "probation" and "deferred adjudication," with probation being defined as a conviction with a suspended sentence and deferred adjudication being defined as the deferment of a finding of guilt for a period of time subject to a defendant complying with certain terms and conditions. *See* Art. 42.12, §2; *Rodriguez v. State*, 939 S.W.2d 211, 220 (Tex. App. – Austin 1997, no pet.). It is clear from the record that when the prosecutor, defense counsel, and the trial judge referred to "probation" as a possible sentence for petitioner, they were referring to "deferred adjudication" community supervision. Petitioner was eligible for community supervision, and his plea was not involuntary because he was so advised.

Moreover, while petitioner faults his attorney for not filing an appeal, he has shown no harm because he was represented by counsel on appeal, his direct appeal briefs were timely filed, and he does not allege that the result on appeal would have differed had his original trial attorney

represented him. Petitioner's claims of ineffective assistance of counsel entitle him to no relief.

## V.  DUE PROCESS

Finally, in his fourth ground for relief, petitioner asserts that his due process rights were violated because the trial judge did not permit him to testify on his own behalf and he was rushed through the sentencing hearing.

During the state habeas proceedings, the trial court found that petitioner and his mother and father testified on his behalf, and the trial court permitted defense counsel to stipulate to what petitioner's fiancé would testify to if called as a witness. The state court also found that the trial court fully explained the reasons for the sentences he received to petitioner and concluded that petitioner received a full and fair trial and due process of law. (S.H.Tr.[W05-35811-S(A)]:38-39). This claim was then denied on its merits by the Court of Criminal Appeals. The state court's factual findings are not an unreasonable determination of the facts in light of the evidence presented in the state court proceeding, and the conclusion is not contrary to federal law.

At petitioner's plea hearing, he testified in detail on both direct and cross-examination. (R. 1:14-27). Petitioner testified that he sold drugs to make money, not to support a drug problem, that he had started a furniture company and needed money to buy tools so that he would not lose bids, and that he needed money to get his children in school. (R. 1:15-16). Petitioner also expressed remorse and apologized to all of the people he had hurt, including his new baby and his three other children. (R. 1:16-17). He also testified that he never meant to hurt anyone, that he did the wrong thing to try to get money for his business, and that he would continue his business with assistance from others if he received probation. (R. 1:17). Both petitioner's mother and father testified on his behalf, and the parties stipulated that petitioner's fiancé would testify that petitioner tried his best

13

to provide for her and her daughter and that she would like for him to receive probation. (R. 1:8-14).

Moreover, petitioner received the minimum sentence in two of his cases and close to the minimum in the third after the State agreed to drop one of the enhancement paragraphs in each case. The record does not show that he was not allowed to testify on how own behalf, that he was not allowed to present evidence on his behalf, that the trial judge rushed through the sentencing hearing, or that petitioner was denied due process. Given his criminal history, petitioner received much lower sentences in his three cases than he might have had the State not dropped the second enhancement and had the trial judge not taken his personal circumstances into consideration. Petitioner's fourth ground for relief is without merit and should be denied.

## VI. STATE CONSIDERATION OF CLAIMS

Petitioner raised all of his claims in his state writs. The Court of Criminal Appeals denied the state writs on the findings of the trial court, and thus petitioner's claims were adjudicated on the merits. These decisions at the state level are consistent with, and involved no unreasonable application of, applicable Supreme Court precedent. The adjudication of the claims did not result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented to the state court. Under applicable Supreme Court standards and the AEDPA standards, petitioner is entitled to no habeas relief on the claims raised in this action.

## VII. RECOMMENDATION

The Court should **DENY** with prejudice the request for habeas corpus relief brought pursuant to 28 U.S.C. § 2254.

**SIGNED on this 17th day of July, 2009.**

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a copy of these findings, conclusions, and recommendation on all parties by mailing a copy to each of them. Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must file and serve written objections within ten days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory or general objections. Failure to file written objections to the proposed findings, conclusions, and recommendation within ten days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (*en banc*).

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE